IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BREEDEN MEDIA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:24-cv-00723 |
| | ) | |
| v. | ) | Judge Aleta A. Trauger |
| | ) | |
| THE DAILY WIRE, LLC, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant performed standard news reporting and commentary in its licensed and fair use of the video in question (the "Video"). Plaintiff appears to be targeting this media outlet with this dubious case, among the thousands its counsel has filed in recent years. Plaintiff has failed to state a claim upon which can be granted under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff alleges copyright infringement from Defendant's journalistic commentary on a 29-second excerpt from a video of an event of national interest as part of Defendant's one-hour broadcast. The Video has been broadcast and rebroadcast over 18,000 (eighteen thousand) times on numerous websites by news organizations, news commentators, and others – from users on X (formerly known as "Twitter"), to Media Matters to CNN and CBS Chicago to Steve Bannon and Charlie Kirk – with over 19 million total views across the various platforms and websites.

Plaintiff's apparent selective pursuit of Defendant fails for several dispositive reasons under Fed. R. Civ. P. 12(b)(6). First, when Plaintiff's namesake, James Breeden, posted the Video on X, he licensed the use in question because X's Terms of Service provide that, by posting, "you [i.e., James Breeden] provide us [i.e., X] with a broad, royalty-free license to make your Content

available to the rest of the world and to let others [i.e., Defendant] do the same."[1] This license expressly includes the rights "to use, copy, reproduce . . . display and distribute such Content in any and all media or distribution methods now known or later developed."

Second, Plaintiff lacks statutory standing to pursue this lawsuit because, prior to his purported assignment of the Video's copyright to Plaintiff, Mr. Breeden had relinquished the rights upon which Plaintiff now maintains its lawsuit. Mr. Breeden did so when he elected to post the video on X and agreed to its Terms of Service.

Third, Defendant's use for "comment" and "news reporting" is a quintessential fair use identified as "not an infringement of copyright" in the governing statute, 17 U.S.C. § 107.

If the Court declines to dismiss Plaintiff's Complaint, however, Defendant respectfully requests that the Court order Plaintiff to post a cost bond as a condition to pursuing its claim. This dubious lawsuit is one of thousands Plaintiff's counsel has filed in federal court in the past several years. Courts have required counsel's clients to post a bond or have taken other measures to ensure that the claims warrant the time and expense involved in a Federal lawsuit. *See, e.g., Mondragon v. Nosrak LLC*, 500 F. Supp. 3d 1175, 1178 (D. Colo. 2020) (requiring a cost bond based on a "history of filing claims of dubious factual and legal merit and repeated instances of misbehavior").

Accordingly, for these reasons and those stated below, Defendant respectfully requests that the Court dismiss Plaintiff's lawsuit for failure to state a claim upon which relief can be granted. In the alternative, Defendant respectfully requests that the Court order Plaintiff to post a cost bond as a condition for continuing to pursue its claim.

---

[1] https://x.com/en/tos. "Courts routinely take judicial notice of terms of service." *Zhang v. Twitter Inc.*, No. 23-CV-00980-JSC, 2023 WL 5493823, at *3 (N.D. Cal. Aug. 23, 2023) (citing cases).

## I. FACTS[2]

Defendant is a media company and engages in journalism. (*See* Cplt., ¶¶ 30-31.) James Breeden is a self-described freelance photojournalist based in Dallas, Texas.[3] In March 2024, Mr. Breeden recorded a 39-second video (the Video) of migrants rushing the border in El Paso, Texas. (*See id.*, ¶ 2.) At 1:53 p.m. on March 21, 2024, a self-described Texas reporter named Jennie Taer posted 37 seconds of the Video on X:[4]



---

[2] Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant takes as true the Complaint's allegations for purposes of this motion only. Defendant's recitation of the facts should not constitute an admission, as Defendants dispute many of Plaintiff's factual allegations. Defendant has also included facts not subject to reasonable dispute of which this Court may take judicial notice. *See* Fed. Evid. 201(b).

[3] James Breeden X Profile, https://x.com/JamesBreeden. "Courts can take judicial notice of publicly accessible social media posts." *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV181882JGBSHKX, 2023 WL 2918724, at *4 (C.D. Cal. Apr. 12, 2023), *appeal dismissed*, No. 23-55438, 2023 WL 7478705 (9th Cir. Aug. 16, 2023) (citing cases).

[4] Jennie Taer X Profile, https://x.com/jenniestaer?lang=en; https://x.com/JennieSTaer?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor.

At 5:26 p.m. on March 21, 2024, Mr. Breeden posted the Video on X. (*See id.*, ¶ 16; https://x.com/JamesBreeden/status/1770940058885099589.)

X's Terms of Service provide in part as follows:

**There are Intellectual Property Licenses in these Terms:** You retain ownership and rights to any of your Content you post or share, and <u>you provide us with a broad, royalty-free license to make your Content available to the rest of the world and to let others do the same</u> . . .

You should only provide Content that you are comfortable sharing with others . . . If you believe that your Content has been copied in a way that constitutes copyright infringement, please report this by visiting our Copyright reporting form (https://help.x.com/forms/dmca) or contacting our designated copyright agent at: [address]. . .

<u>By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods now known or later developed (for clarity, these rights include, for example, curating, transforming, and translating). This license authorizes us to make your Content available to the rest of the world and to let others do the same</u>. You agree that this license includes the right for us to provide, promote, and improve the Services and to make Content submitted to or through the Services available to other companies, organizations or individuals for the syndication, broadcast, distribution, repost, promotion or publication of such Content on other media and services, subject to our terms and conditions for such Content use. Such additional uses by us, or other companies, organizations or individuals, is made with no compensation paid to you with respect to the Content that you submit, post, transmit or otherwise make available through the Services as the use of the Services by you is hereby agreed as being sufficient compensation for the Content and grant of rights herein.[5]

X also has a "Fair use policy" explaining, among other things, that:

Certain uses of copyrighted material may not require the copyright owner's permission. In the United States, this concept is known as fair use.[6]

On March 22, 2024, Defendant offered political commentary regarding a properly-attributed excerpt from the Video in the middle of a one-hour broadcast on Defendant's X and

---

[5] https://x.com/en/tos (underline added).
[6] https://help.x.com/en/rules-and-policies/fair-use-policy.

Rumble accounts and on Defendant's website. (*See* Cplt., ¶ 35; *e.g.*, https://x.com/MattWalshShow/status/1771235461479977055?t=983.) The specific timestamp at 16:23 for where the discussion of the Video begins is here: https://x.com/MattWalshShow/status/1771235461479977055?t=983.

Around the same time, numerous other news organizations, news commentators, and others similarly broadcast and rebroadcast the Video as part of their journalism and commentary, including Media Matters, CNN, CBS Chicago, Steve Bannon, Charlie Kirk, and thousands of people on X.[7] To date, the video has been so rebroadcast over 18 thousand times with over 19 million total views across the various platforms and websites.[8]

Mr. Breeden subsequently attempted to assign the copyright in the Video to Plaintiff, Breeden Media LLC. (Cplt., ¶ 21.) On April 4, Plaintiff purported to register a copyright in the Video. (*Id.*, ¶ 19.)

On April 10, Mr. Breeden posted the following on his X account: "X denied my DMCA [Digital Millennium Copyright Act] takedown notices against all the accounts that stole my work. They're complicit in the thievery."[9] X had responded: "We have evaluated your claims and have determined no further action is warranted as per our copyright Fair Use policy."[10]

---

[7] *See, e.g.*, Media Matters Staff, https://www.mediamatters.org/charlie-kirk/charlie-kirk-calls-shooting-and-whipping-migrants-southern-border-if-you-enter-we-have; War Room with Steve Bannon PM Edition 3-21-24, https://rumble.com/v4knqii-war-room-with-steve-bannon-pm-show-3-21-24.html; The Lead, "New video shows migrants rushing portion of border fence," https://www.cnn.com/videos/politics/2024/03/21/migrant-rush-texas-border-lavandera-lead-vpx.cnn; CBS Chicago, https://www.youtube.com/watch?v=F1xTJqojjrc.

[8] *See, e.g., id.*; 18,000 reposts and 19.1 million views at https://x.com/jenniestaer?lang=en and https://x.com/JennieSTaer?ref_src=twsrc%5Egoogle%7Ctwcamp; 402,000 views at https://x.com/JamesBreeden/status/1770940058885099589.

[9] https://x.com/jamesbreeden/status/1778176883798188189?s=46.

[10] *Id.*

5

After some prelawsuit communications, Plaintiff filed this lawsuit on June 13, 2024. (*See id.*, ¶¶ 57-58.)

## II. STANDARD OF REVIEW

For purposes of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a court takes all of the complaint's factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Just a bare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*; *accord Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) ("[T]he district court need not accept a bare assertion of legal conclusions."); *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) ("A legal conclusion couched as a factual allegation is not entitled to the presumption of truth.").

## III. ARGUMENT

**A. The X Terms of Service license the use in question.**

A license is a complete defense to a copyright-infringement claim. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) ("a license is a defense to a claim of copyright infringement.").

X's Terms of Service expressly license the type of use at issue:

> **There are Intellectual Property Licenses in these Terms:** You retain ownership and rights to any of your Content you post or share, and you provide us with a broad, royalty-free license to make your Content available to the rest of the world and to let others do the same . . .

> By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods now known or later developed (for clarity, these rights include, for example, curating, transforming, and translating). This license authorizes us to make your Content available to the rest of the world and to let others do the same.[11]

Here, Defendant has a license for its use of the Video based on the X Terms of Service, where Mr. Breeden (and Ms. Taer first) posted the Video. If Mr. Breeden did not want to give up his rights to his content, then he should not have posted it on X or permitted others (e.g., Ms. Taer) to post his content on X. If Mr. Breeden did not want to abide by X's Terms of Service, he could always host his content on his own website.

Defendants anticipate that Plaintiff will make two arguments in response. First, Plaintiff may argue the X Terms of Service only allow unlimited usage on X or as an "embed" of X content on another website. *Cf. Hunley v. Instagram, LLC*, 73 F.4th 1060, 1077 (9th Cir. 2023) ("By posting photographs to her public Instagram profile, Hunley stored a copy of those images on Instagram's servers. By displaying Hunley's images, Instagram did not directly infringe Hunley's exclusive display right because Instagram had a nonexclusive sublicense to display these photos."). The express license in X's Terms of Service, however, is not so limited and provides "others" a "broad, royalty-free license to make your Content [i.e., the Video] available to the rest of the world," such as "to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods now known or later developed."

Next, Defendant may cite an unpublished, out-of-jurisdiction case holding that there was a "caveat" in Twitter's Terms of Service regarding what "subject to [Twitter's] terms and conditions

---

[11] https://x.com/en/tos.

7

Case 3:24-cv-00723   Document 18   Filed 08/08/24   Page 7 of 18 PageID #: 55

for such Content use." *Babcock v. Gannett Satellite Info. Network, LLC*, 2021 WL 534754, at *5 (N.D. Ind. Feb. 12, 2021). Here, however, there is no such uncertainty with regard to the X Terms of Service (effective September 29, 2023), which prohibit enumerated "misuse[s] of the services" that have no bearing on making available content to the rest of the word, such as agreeing not to reverse engineer X's platform.

In short, Defendant has a license per X's Terms of Service to use the Video as it did, and thus Plaintiff's Complaint should be dismissed for failure to state a claim.

**B. Plaintiff lacks statutory standing.**

A copyright owner typically may sue an infringer for certain uses of a copyrighted work. *See* 17 U.S.C. 501 (b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it.").

Here however, as noted above, Mr. Breeden relinquished certain exclusive rights a copyright owner otherwise would have retained when he posted the Video on X on March 21, 2024. (*See* Cplt., ¶ 16; https://x.com/JamesBreeden/status/1770940058885099589.) For instance, he provided X and others "a broad, royalty-free license to make your Content available to the rest of the world," including the rights "to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods now known or later developed (for clarity, these rights include, for example, curating, transforming, and translating)."[12]

Mr. Breeden did not purport to assign the Video's copyright to Plaintiff until later, after Mr. Breeden had relinquished those rights. (*See* Cplt. ¶ 21.) It is axiomatic that Plaintiff could not have

---

[12] https://x.com/en/tos.

8

Case 3:24-cv-00723　　Document 18　　Filed 08/08/24　　Page 8 of 18 PageID #: 56

received by assignment rights Mr. Breeden did not have to assign. Thus, Plaintiff does not have the legal right to sue Defendant for displaying an excerpt from the Video. *See HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 386 (7th Cir. 2011) (dismissing copyright claim for lack of statutory standing).

**C. Defendant's journalistic use was fair use.**

Another complete defense to Plaintiff's lawsuit is fair use. "The preamble to Section 107 specifically identifies 'news reporting' as not an infringement of a copyright." *Castle v. Kingsport Publ'g Corp.*, No. 2:19-CV-00092-DCLC, 2020 WL 7348157, at *6 (E.D. Tenn. Dec. 14, 2020). Section 107, the applicable statute, provides in part:

> [T]he fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, <u>comment, news reporting</u>, teaching (including multiple copies for classroom use), scholarship, or research, <u>is not an infringement</u> of copyright.

17 U.S.C. § 107 (emphasis added).

The statute sets forth four factors in determining fair use. Those factors dispositively favor Defendant, even taking as true the factual allegations in Plaintiff's Complaint.

    *i.    The purpose and character of the use*

"The purpose and character of the use" was for comment and news reporting and was transformative. As the Supreme Court has noted, news reporting is "easily understood" as fair use. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) (quoting court of appeals decision). There is a "strong presumption" that news reporting is fair use. *Brody v. Fox Broad. Co., LLC*, No. 22CV6249 (DLC), 2023 WL 2758730, at *3 (S.D.N.Y. Apr. 3, 2023).

In *Brody*, the district court granted a motion to dismiss, holding that the first factor favored the defendant where a Fox affiliate had used the plaintiff's photograph in a news broadcast:

9

> Although a news reporting purpose alone does not guarantee a finding of fair use, the Second Circuit has held that even a news organization's dissemination of a full, unadulterated recording of a company's earnings call constituted fair use when "the sound recording conveys information that a transcript or article cannot" . . . There is no question that FOX was reporting on a newsworthy subject, adding commentary to place Meggs' charges and the FBI Image in context for the viewer.

*Brody*, 2023 WL 2758730, at *3 (quoting *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 86-87 (2d Cir. 2014)); *see also Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 581 (S.D.N.Y. 2020) ("For instance, a news report about a video that has gone viral on the Internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about.") (citation omitted).

A case from the Eastern District of Tennessee counsels the same result. *See Castle*, 2020 WL 7348157, at *5. A newspaper used a photograph for "news reporting . . . going to the heart of the controversy" relating to constructing a school over sinkholes. *Id.* The defendant "used [the photograph] to address issues of public concern generated as a result of Ireson's presentation to the BOE [Board of Education], which included the use of the Photograph to prove his point." *Id.* The court found fair use and granted the defendant's summary-judgment motion.

Another case from a California District Court further demonstrates that fair use protects the type of political commentary at issue in the instant case:

> Having reviewed the accused videos, the Court determines that—even assuming the City has any copyright interest to assert—they are clearly protected by the fair use doctrine. Indeed, the Court can scarcely conceive of works that are more appropriately protected by the fair use doctrine and § 107 than the Teixeira Videos. He is engaged in core First Amendment speech commenting on political affairs and matters of public concern. To do so, he has taken carefully selected and short portions of significantly longer works, and embellished them with commentary and political criticism through music, his voice, and written subtitles. Even if California law allowed the City to assert a copyright claim, Teixeira's activities plainly fall within the protections of fair use.

*See City of Inglewood v. Teixeira*, No. CV1501815MWFMRWX, 2015 WL 5025839, at *12 (C.D. Cal. Aug. 20, 2015).

As in *Brody*, *Castle* and *Teixeira*, Defendant's journalistic use was fair use despite its commercial nature. Indeed, Defendant's journalist was reporting on a newsworthy subject, namely migrants rushing the border in Texas. (*See* Cplt., ¶ 2.) All sides of the political spectrum pervasively discussed this incident and broadcast the Video and excerpts from it when commenting on this issue.[13] It is common knowledge that immigration has been one of the most important issues for Americans in poll after poll.[14]

Moreover, Defendant's use was transformative. Defendant included a 29-second excerpt from the viral Video as part of an hour-long broadcast on migration and other issues. After attributing the video to Breeden/the *New York Post*, Defendant's journalist added spoken commentary during the Video, stating his opinion about "this violent mob pushing through the border and through the National Guard . . . now you see they break through."[15] The Video excerpt moves to being displayed on a TV behind the host as part of the set design of his broadcast, while including written commentary.[16] The journalist continued his discussion of the Video, criticizing the government's immigration policy and explaining his view of the issue as a matter of national security.[17] Here is a screenshot from the broadcast:

---

[13] *See* FNs 7 and 8; *see also, e.g.*, https://www.yahoo.com/entertainment/morning-joe-resurfaces-trump-saying-001711335.html (Joe Scarborough of MSNBC discussing the incident at length, while for minutes holding up the *New York Post* printed edition with a screenshot from the Video).
[14] *See, e.g.*, Saad, Lydia, Inflation, Immigration Rank Among Top U.S. Issue Concerns, https://news.gallup.com/poll/642887/inflation-immigration-rank-among-top-issue-concerns.aspx
[15] https://x.com/MattWalshShow/status/1771235461479977055?t=983 (linking to the specific timestamp where the discussion of the Video begins at 16:23).
[16] *Id.*
[17] *Id.*

11



Accordingly, the first factor favors Defendant. *See also Walsh*, 464 F. Supp. 3d at 577 (online website's use of photograph was fair use).

        *ii.*     *The nature of the copyrighted work*

The "nature of the copyrighted work" is purely factual – the Video literally and only depicts something that happened. There is no music. There are no special effects. Accordingly, this factor also favors Defendant. *See Castle*, 2020 WL 7348157, at *6 ("In this context, however, the Photograph was intended to convey information and not the result of creative expression."); *see also Barcroft Media, Ltd. v. Coed Media Grp.*, LLC, No. 16-CV-7634 (JMF), 2018 WL 357298, at *3 (S.D.N.Y. Jan. 10, 2018) ("Plaintiffs' photographs—which are predominantly factual depictions of the lifestyle and fashion choices of celebrities and the subjects of human interest stories—exhibit only limited degrees of creativity, unlike fictional or transformational works that represent the 'core' of the Copyright Act's protections.").

iii. *The amount and substantiality of the portion used in relation to the copyrighted work as a whole.*

The third factor also favors Defendant. The excerpt from the Video is only 29 seconds of Defendant's hour-long broadcast. After playing the Video excerpt briefly, Defendant's journalist quickly cut away from the Video when the migrants pushed through the National Guard, stating "ok, good," signaling to the producer to stop playing the video.[18] Even had Defendant played the entire Video, "[i]n the context of news reporting ... the need to convey information to the public accurately may ... make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without alteration." *Brody*, 2023 WL 2758730, at *4 (quoting *Swatch*, 756 F.3d at 84 and stating that, "[i]n such instances, this factor weighs 'in neither party's favor' but granting a motion to dismiss nonetheless). *See also Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 463 (S.D.N.Y. 2020), *aff'd*, 855 F. App'x 61 (2d Cir. 2021) ("Because the portion of the Song used by Defendants is neither quantitively nor qualitatively excessive, the third factor weighs in favor of a finding of fair use."); *Castle*, 2020 WL 7348157, at *7 ("In this context, Defendant's copying the Photograph in its entirety was reasonable and consistent with its purpose of providing another explanation for the anomalies shown in the Photograph.").

iv. *The effect of the use upon the potential market for or value of the copyrighted work.*

"The effect of the use upon the potential market for or value of the copyrighted work" is "undoubtedly the single most important element of fair use." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 50 (2021) (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985)). This factor decisively favors Defendant for four reasons.

---

[18] *Id.*

First, that effect is less than negligible. As noted above the Video has been broadcast and rebroadcast over 18,000 times on numerous websites by news organizations, news commentators, and others – from users on X to Media Matters to CNN and CBS Chicago to Steve Bannon and Charlie Kirk – with over 19 million total views across the various platforms and websites. Plaintiff's Complaint ignores and did not allege that those innumerable other uses were licensed or that, if licensed, any license fees were anywhere close to what Plaintiff demands. Moreover, Plaintiff presumably has been paid by the *New York Post*, whose article and broadcast generated enormous publicity for that news outlet.[19] Defendant's use is less than a drop in the bucket of the ocean of uses and views of the Video on the internet. *See Bell v. Worthington City Sch. Dist.*, 2020 WL 2905803, at *8 (S.D. Ohio June 2, 2020) ("In sum, the widely published nature of this work prior to Defendant's use leads this factor to weigh in favor of a finding of fair use.").

Second, the Video excerpt's inclusion in the middle of a much longer broadcast renders the notion of market competition implausible. *See Walsh*, 464 F. Supp. 3d at 586 ("because the Photograph did not appear on its own, but as part of the Post, alongside text and another image, it is implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of her work.").

Third, Defendant gave proper attribution for the Video, as the below screenshot demonstrates:[20]

---

[19] *See* FNs 7 and 8 above.
[20] https://x.com/MattWalshShow/status/1771235461479977055?t=983.

14

Case 3:24-cv-00723     Document 18     Filed 08/08/24     Page 14 of 18 PageID #: 62



Attribution weights against market harm:

[T]he article, attached as Exhibit D to the Amended Complaint, clearly attributes the quoted material as a "poem by Dr. Keith Bell." The article, therefore, controls over Bell's allegations. Because the quote was attributed to Bell, readers of the article were capable of searching and finding his book and other products. If anything, the small portion of the book quoted in the article acted as an advertisement of Bell's full-length work. Bell did not allege that he suffered a decline in requests for licenses or assignments of his book after the article appeared. Moreover, Defendants did not need to obtain a license from Bell or pay him some sort of remuneration if their news reporting qualified as fair use. Bell cannot claim that his failure to obtain a license fee from Defendants alone is the type of financial injury that would qualify under this factor. Defendants rightly argue in their motion to dismiss that Bell fails to allege that Defendants intended to cause Bell injury or that Bell even had an injury. Given the lack of any allegation that the quote negatively effected the potential market for or value of the copyrighted work, this factor also favors Defendants.

*Bell v. Magna Times*, LLC, No. 2:18CV497DAK, 2019 WL 1896579, at *5 (D. Utah Apr. 29, 2019)

(granting motion to dismiss based on fair use defense).

Here too, Defendant provided proper attribution for the article. And Plaintiff's cursory allegation of market harm is entirely unsupported and implausible based on the overwhelming evidence to the contrary that is not subject to reasonable dispute. (*See* Cplt. ¶¶ 55-56.)

Fourth, Mr. Breeden granted an unlimited, sublicensable license to X. X is allowed to do whatever it wants with the content. Accordingly, the value of the content is already approximately zero, and Defendant's use of the video one time in the context of an hour-long commentary does not affect the value at all.

As with the first three factors, the fourth factor also favors Defendant. It is not surprising that X denied Mr. Breeden's claim that others were infringing the Video.[21] Accordingly, Defendant is entitled to dismissal of Plaintiff's lawsuit based on Defendant's fair use defense.

**D. If the Court allows the case to proceed, Plaintiff should post a cost bond.**

If the Court does not dismiss this case, Defendant respectfully requests that the Court require Plaintiff to post a cost bond to prosecute its dubious case with, at best, *de minimis* supposed damages. This case appears to follow a pattern similar to others of the thousands Plaintiff's counsel has filed in recent years.[22] *See, e.g., Mondragon v. Nosrak LLC*, 500 F. Supp. 3d 1175, 1178 (D. Colo. 2020) (requiring plaintiff to post a cost bond based on a "history of filing claims of dubious

---

[21] https://x.com/jamesbreeden/status/1778176883798188189?s=46.
[22] A Pacer search shows almost 3,000 lawsuits since January 2019:

 Party Search Results

**Search Criteria:** Party Search; Date Filed From (On or After): [01/01/2019]; Date Filed To (On or Before): [08/08/2024]; Last Name: [Sanders]; First Name: [Craig]; Middle Name: [B]
**Result Count:** 2812 (53 pages)

This Court can take judicial notice of such Pacer results. *Riches v. Garese,* No. CIV.A. 0:08-CV-086-H, 2008 WL 2475733, at *1 (E.D. Ky. June 18, 2008) ("The Court takes judicial notice of the total 2,023 cases which the instant Plaintiff has brought to the federal courts."); *See also Landt v. Farley*, No. 4:12CV0740, 2012 WL 4473209, at *1 n.1 (N.D. Ohio Sept. 26, 2012).

factual and legal merit and repeated instances of misbehavior"); *FameFlynet, Inc. v. Jasmine Enters.*, 2019 U.S. Dist. LEXIS 133357, at *18 (N.D. Ill. Aug. 8, 2019) (reducing by over 95% plaintiff's fee claim that "simply makes no sense"); *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 59 (2d Cir. 2019) ("I cannot let pass my concern over BWP's record of aggressive litigation, which entails filing hundreds of lawsuits directed at ISPs without even attempting to substantiate its claims in discovery."); *Barcroft Media, Ltd.*, 2018 WL 357298, at *8 ("It is worth noting that Plaintiffs themselves engaged in some troubling litigation tactics" and denying plaintiff's fee request); *Megna v. Biocomp Labs.*, 225 F. Supp. 3d 222, 225 (S.D.N.Y. 2016) (describing plaintiff's litigation conduct as "objectively unreasonable" and finding that "[a]n award of attorney's fees to Defendants is necessary to deter Plaintiff's from filing false claims").

In *Mondragon*, the Court required the Plaintiff to post a cost bond in the amount of $3,500 as a condition for pursuing its case. Defendant respectfully submits that a cost bond in that range would be appropriate here given the strength of Defendant's defenses, the (at best) negligible alleged damages, and the pattern described in other cases.

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendant respectfully requests that the Court order Plaintiff to post a cost bond as a condition to continuing to pursue this case.

Respectfully submitted,

s/ W. Russell Taber, III
W. Russell Taber, III (BPR 24741)
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
rtaber@rjfirm.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF filing system this the 8th day of August, 2024 upon the following:

Craig Sanders
SANDERS LAW GROUP
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 11553
csanders@sanderslaw.group

s/ W. Russell Taber, III